### JOHNSON v. UNITED STATES.

(Circuit Court of Appeals, Fifth Circuit. January 6, 1925.)

No. 4308.

Collision ⬤➾95(7)—A schooner and tug both held in fault for collision between the schooner and tow.

A collision occurred at night, in a narrow channel, between an auxiliary schooner passing down, and one of two barges in tow of a tug passing up, in the middle of the channel, with the barges swung toward the west of her course. Owing to an obstruction the schooner was obliged to keep near the middle of the channel at that point. The tug carried lights indicating a tow, but the barges carried no side

lights and but one stern light; the nearest being 300 feet astern of the tug. On passing the tug, the schooner, seeing a white light to the starboard of her course, attempted to cross astern of the tug, struck the towline, and came into collision with the first barge. Held, that the schooner was in fault for attempting to cross without ascertaining that the tow was alongside; that the tug was in fault for violation of the rules in being in the middle of the channel and in failing to carry the required lights on the barges.

Appeal from the District Court of the United States for the Southern District of Alabama; Robert T. Ervin, Judge.

Suit in admiralty for collision by Melvin Johnson against the United States. Decree for respondent, and libelant appeals. Reversed and remanded.

Gregory L. Smith, of Mobile, Ala., (Smiths, Young, Leigh & Johnston, of Mobile, Ala., on the brief), for appellant.

Aubrey Boyles, U. S. Atty., and Jos. W. John, Asst. U. S. Atty., both of Mobile, Ala.

Before WALKER and BRYAN, Circuit Judges, and ESTES, District Judge.

BRYAN, Circuit Judge. This is a libel in personam, brought by the appellant for damages to his auxiliary schooner, which occurred in a collision with a barge in tow of appellee's tug. The collision occurred at night in the channel of Mobile river, just below the city of Mobile. The point of collision was opposite Dredge Island, where the river bends. The channel was normally about 400 feet in width, but there was an obstruction which made it necessary for a vessel coming down the river in passing this point to swing to the eastward and toward the center of the channel. The tug, General Carl A. Loah, with two barges in tow, was in the center of the channel coming up the river, and the barges were somewhat nearer the western edge. The master of the schooner Over the Waves, just as he was about to pass the tug, observed a light to the west of the center of the channel, and, thinking that another vessel was coming up the river, attempted to pass immediately astern of the appellee's tug, and ran into the tug's hawser. In this manner the schooner was thrown against the first barge and damaged.

The testimony is in irreconcilable conflict, but that for the appellee is to the effect that neither of the barges had its side lights burning, but each one had one white light on her stern; that the forward barge was 175 feet in length, and was being towed 125 feet behind the tug; and that the rear barge was 200 feet in length, and only 10

or 12 feet behind the forward barge. Appellant admits that the tug carried two white lights in a vertical line, indicating that it had at least one vessel in tow, as required by article 3, Act of June 7, 1897, 30 Stat. 96 (Comp. St. § 7877). The District Court dismissed the libel.

We are of opinion that appellant's schooner was at fault, in that, notwithstanding lights on the tug indicated a tow, it attempted to cross the center of the channel immediately behind the tug, without first ascertaining that the tow was not alongside. But there were no side lights on either barge, and the nearest white light was at least 300 feet behind the tug. Both barges were to the westward of the center of the channel, and reasonably indicated an obstruction ahead of the schooner, which as it then appeared might be too close to the westward edge of the channel to permit the schooner to pass to starboard. The schooner, therefore, was apparently in imminent danger, and its action in undertaking to cross behind the tug to the east side of the channel was reasonably prudent under the circumstances.

The tug, also, was clearly at fault. The Rules of Navigation provide that barges being towed by a steam vessel in tandem "shall each carry a green light on the starboard side and a red light on the port side and a white light on the stern, except that the last vessel of such tow shall carry two white lights on her stern athwartship horizontal to each other," etc. Article 25 of the Rules of Navigation makes it the duty of a steam vessel, when it is safe and practicable, to keep to that side of the fairway or midchannel which lies on its starboard side. The channel where the collision took place was a narrow channel within the meaning of this rule. The No. 4, 161 F. 847, 83 C. C. A. 665.

Admittedly each of these rules of navigation were being violated by the tug. There were no green and red side lights on either barge, only one white light, instead of two, was on the rear barge, and the tug was in the center of the channel. The burden was on the appellee to show, not only that its violations of these rules probably did not contribute to the collision, but that they could not have done so. The Pennsylvania, 19 Wall. 125, 137, 22 L. Ed. 148; Belden v. Chase, 150 U. S. 674, 14 S. Ct. 264, 37 L. Ed. 1218; The Martello, 153 U. S. 64, 14 S. Ct. 723, 38 L. Ed. 637; The Britannia, 153 U. S. 130, 14 S. Ct. 795, 38 L. Ed. 660; Lie v. San Francisco & Portland S. S. Co., 243 U. S. 291, 37 S. Ct. 270, 61 L. Ed. 726. If the barges

had been equipped with proper lights, in all probability there would have been no collision.

Both the schooner and the tug being at fault, the libel should not have been dismissed, but the damages should be equally divided. The Anna (C. C. A.) 297 F. 182.

The decree is reversed, and the cause remanded for further proceedings not inconsistent with this opinion.